Robert E. SPURLIN, Director of Special Fund, Appellant,

v.

Herbert BROOKS; Whayne Supply Company; Whayne Supply Company (As Insured by Gab Services, Inc.); Whayne Supply Company (As Insured by Liberty Mutual Insurance Group); Thomas A. Dockter, Administrative Law Judge; and Workers' Compensation Board, Appellees.

WHAYNE SUPPLY COMPANY (As Insured by Liberty Mutual Insurance Group), Appellant,

v.

Herbert BROOKS; Whayne Supply Company (As Insured by Gab Services, Inc.); Robert E. Spurlin, Director of Special Fund; Thomas A. Docter, Administrative Law Judge; and Workers' Compensation Board, Appellees.

WHAYNE SUPPLY COMPANY (As Insured by Gab Services, Inc.), Appellant,

v.

Herbert BROOKS; Whayne Supply Company (As Insured by Liberty Mutual Insurance Group); Robert E. Spurlin, Director of Special Fund; Thomas A. Dockter, Administrative Law Judge; and Workers' Compensation Board, Appellees.

Nos. 96–SC–434–WC, 96–SC–445–WC, 96–SC–460–WC.

Supreme Court of Kentucky.

April 24, 1997.

Rehearing Denied Oct. 30, 1997.

Judith K. Bartholomew, Appellate Attorney, Louisville, for Special Fund.

Michael Fleet Johnson, Clark & Johnson, Pikeville, for Herbert Brooks.

William S. Kendrick, Francis, Kendrick & Francis, Prestonsburg, for Whayne Supply Co.

John Harlan Callis, III, Deron L. Johnson, Boehl, Stopher & Graves, Prestonsburg, for Whayne Supply Co. (As Insured by Gab Services, Inc.).

Penelope R. Justice, Ronald L. Lester, Robinette and Associates, Pikeville, for Whayne Supply Co. (As Insured by Liberty Mutual Insurance Group).

Thomas A. Dockter, Administrative Law Judge, Louisville, for Thomas A. Dockter.

Walter W. Turner, Commissioner, Department of Workers' Claims, Frankfort, for Workers' Compensation Board.

STUMBO, Justice.

In January 1986, claimant injured his lower back at work. After undergoing surgery, he returned to work in March 1987, but continued to have problems with his back which caused intermittent periods of temporary, total disability. Then, in November 1990, claimant again injured his back and became unable to return to work. Workers' compensation claims were filed for the two injuries and consolidated. The employer was insured by Liberty Mutual Insurance Company (Liberty) at the time of the 1986 injury and GAB Services, Inc. (GAB) at the time of the 1990 injury. There was evidence of preexisting, dormant degenerative changes in claimant's spine, and the defendants stipulated that liability would be apportioned equally between the employer and the Special Fund.

The Administrative Law Judge (ALJ) determined that, in combination, claimant's injuries had resulted in permanent, total occupational disability of which 33.33% was attributed solely to the 1986 injury, 16.67% solely to the 1990 injury, and 50% to the arousal of a prior, dormant nondisabling condition by both injuries. *Young v. Fulkerson*, Ky., 463 S.W.2d 118 (1971). Benefits were ordered to commence as of November 26, 1990, at the 1990 rate, and to continue for so long as claimant remained totally disabled.

Pursuant to petitions for reconsideration, stipulated periods of temporary, total disability were ordered during the period between the two injuries. Furthermore, the ALJ rejected the employer's argument that claimant should receive consecutive partial disability awards, emphasizing that claimant's total disability was the result of the combined effects of his two injuries. Therefore, the ALJ believed that the combined award of total disability was proper. Finally, the ALJ recalculated the combined benefit rate, utilizing the maximum rate for total disability benefits in 1986 and in 1990, multiplied by the respective percentages of disability attributable to each injury. Both insurers appealed.

The Workers' Compensation Board (Board) rejected GAB's assertion that the evidence compelled a finding which attrib-

uted all of claimant's disability to the 1986 injury. The Board noted that, although most of the physicians attributed claimant's impairment entirely to the 1986 injury, Dr. Goodman's testimony provided a sufficient basis for the ALJ's decision to attribute ⅔ of the impairment to the 1986 injury and ⅓ to the 1990 injury.

The Board agreed with Liberty that, when awarding benefits for the 1986 injury, the ALJ was prohibited from considering the effects of the 1990 injury in order to enhance the duration of the award. *Johnson v. Scotts Branch Coal Co.*, Ky.App., 754 S.W.2d 555 (1988). Therefore, the ALJ erred in ordering Liberty to pay lifetime benefits for disability caused by the 1986 injury. Accordingly, the decision of the ALJ was affirmed in part, reversed in part, and the claim was remanded.

Claimant and GAB appealed, with claimant asserting that the Board erred by determining that he was entitled only to partial disability benefits for the 1986 injury. GAB cross-appealed, contesting the finding that the 1990 injury contributed to claimant's disability and joining claimant's argument concerning benefits payable for the 1986 injury. The Court of Appeals affirmed the Board concerning the ALJ's finding that the effects of the 1990 injury contributed to claimant's total disability, emphasizing that it is the role of the ALJ to weigh conflicting medical evidence and to determine which witness to believe. The court did not find the evidence cited by GAB to be so compelling as to require a different result.

Concerning the duration of benefits for the 1986 injury, the Court of Appeals agreed with the Board that claimant was not entitled to benefits for total disability until 1990 when he actually became totally disabled. However, the court believed that he was entitled to an award of benefits for total disability at that time. Therefore, the court determined that claimant was entitled to receive benefits for a 66⅔% permanent, partial occupational disability, payable for 425 weeks, at the 1986 rate, and apportioned equally to Liberty and the Special Fund. The court agreed with GAB that permanent, partial disability benefits paid for the 1986 injury should be credited against the 1990 award of total disability in order to avoid double compensation. KRS 342.730(2). However, the court rejected the argument that the 66⅔% disability attributable to the 1986 injury must be entirely excluded from the total disability award. Hence, the court determined that, as of the date of the 1990 injury, claimant was entitled to receive benefits for total disability, at the 1990 rate, apportioned equally between GAB and the Special Fund, with a credit against the award to the extent of any overlapping benefits paid pursuant to the partial disability award. Hence, the decision of the Board was reversed in part, and the case was remanded to the ALJ for further consistent proceedings.

Subsequently, petitions for rehearing were granted, the original opinion was withdrawn, and a modified opinion was rendered. The modified opinion noted that this Court's decision in *Campbell v. Sextet Mining Co.*, Ky., 912 S.W.2d 25 (1995), was factually on point and controlling of the outcome. The Court of Appeals noted that, pursuant to *Campbell*, where the ALJ finds that total disability results from the combined effects of two injuries, lifetime benefits are to be paid for the entire disability not excluded as a prior, active condition. *Id.* at 26. Furthermore, lifetime benefits are to be awarded for both injuries as though they occurred at the same time. *Id.* at 27. Although the Court of Appeals believed that *Campbell* allowed claimant to receive a windfall, since it permitted him to receive total disability benefits during the period between the two injuries when he was not totally disabled, the court noted that it was compelled to follow Supreme Court precedent. Therefore, the decision of the Board was reversed to the extent that it denied claimant lifetime benefits for the 1986 injury, and the decision of the ALJ was reinstated.

GAB continues to argue that the evidence did not support the finding that part of claimant's ultimate occupational disability was caused by the 1990 injury. However, we observe that the ALJ's finding in that regard has twice been affirmed. It appears that the Board and the Court of Appeals conducted a thorough review of the evidence, and we are

not persuaded that the view of the evidence which they took was either patently unreasonable or flagrantly implausible. Hence, we affirm in that regard. *Western Baptist Hosp. v. Kelly,* Ky., 827 S.W.2d 685 (1992).

The source of the major controversy in this case, as in *Campbell,* is the fact that, although KRS 342.730 provides compensation for both partial and total disabilities which are permanent, awards for partial disability are payable at a lower maximum rate and for a shorter duration than awards for total disability. Permanent, partial occupational disability is compensable for 425 weeks, at the rate of 66⅔% of the worker's average weekly wage multiplied by the percent of occupational disability, and is limited to 75% of the state's average weekly wage. KRS 342.730(1)(b). Whereas, permanent, total disability is compensable for life (so long as the worker remains totally disabled), at the rate of 66⅔% of the worker's average weekly wage, and is limited to 100% of the state's average weekly wage. KRS 342.730(1)(a); *Stovall v. Williams,* Ky.App., 675 S.W.2d 6 (1984). In *Teledyne–Wirz v. Willhite,* Ky. App., 710 S.W.2d 858 (1986), the court determined that the whole of the worker's disability, including any noncompensable, prior, active disability, was to be considered when determining whether benefits for a compensable disability should be awarded pursuant to KRS 342.730(1)(a) or (b). *Id.* at 860. Hence, before the decision in *Campbell,* a worker who was receiving (or entitled to receive) benefits for a partially disabling injury at the time he was rendered totally disabled by a subsequent injury was awarded lifetime benefits pursuant to KRS 342.730(1)(a), but only for the percentage of disability directly attributable to the last injury. In Mr. Campbell's case, despite the fact that he had become totally, occupationally disabled, the lifetime award would have been only for a 10% occupational disability. In the instant case, the lifetime award would be only for a 33⅓% occupational disability, despite the fact that the final injury rendered claimant totally, occupationally disabled.

■ In deciding *Campbell,* we noted that we were presented "with an extremely narrow issue." *Campbell, supra* at 26. That issue was whether a worker was permitted to receive lifetime benefits pursuant to KRS 342.730(1)(a) for the combined effects of work-related injuries which occurred in different years and which rendered him totally occupationally disabled. Agreeing with the arguments advanced by the injured workers in seeking benefits for total disability, we held that:

> since the ALJ in both of these appeals made factual findings of total disability that are supported by the record, we should enforce the legal effect of these findings and direct the entry of an award for lifetime benefits for the entire amount of disability not excluded as a prior active condition.

*Id.* However, further reflection makes it apparent that, in addressing the application of the holding to the facts of the case, we strayed from our "extremely narrow" holding when we indicated that disability caused by successive injuries which combine to render the worker totally disabled should be treated as though the injuries were suffered at the same time and also when we indicated that a rationale for the decision was the fact that the claims for the two injuries were prosecuted together. *Id.* at 27. To that extent, we erred. Nonetheless, we remain committed to the principle embodied in the holding, that a worker who is rendered permanently and totally disabled by a work-related injury which occurs during the compensable period of a prior, work-related injury is entitled to an award of lifetime benefits, computed pursuant to KRS 342.730(1)(a), for the entire amount of disability not excluded as a prior, active condition.

■ Claimant asserts that *Campbell* stands for the proposition that he is entitled to lifetime benefits for both the 1986 and 1990 injuries and that the ALJ did not order permanent disability benefits to commence until 1990. However, as asserted by Liberty, a defendant may not be held liable for any additional occupational effect which results from the fact that a subsequent disabling injury is superimposed upon the injury for which the defendant is liable. *Johnson, supra.* Hence, notwithstanding any confusion created by our opinion in *Campbell,* the

award for the 1986 injury may extend only for 425 weeks, exclusive of any periods of temporary, total disability, with benefits payable at the 1986 rate pursuant to KRS 342.730(1)(b).

■ In *Campbell,* as in the instant case, a subsequent work-related injury rendered the worker totally disabled during the compensable period for a prior, partially disabling work-related injury. Here, the sum of the percentages of occupational disability attributed to the 1986 and 1990 injuries totals 100%. However, since the 1990 injury rendered claimant totally, occupationally disabled, the occupational effect of the injury exceeded that which would have been the case had there been no prior disability. The occupational effect of the 1990 injury was twofold. First, together with the arousal of ongoing degenerative back problems, it accounted for 33⅓% of claimant's permanent, total disability. Second, due to the differences in KRS 342.730(1)(a) and (b), it caused the 1986 injury, which was being compensated as only a 66⅔% permanent, partial disability, to become 66⅔% of a permanent, total disability. It is this second effect which the Special Fund and GAB would have us ignore but which we determined, in *Campbell,* should be compensable.

■ It has long been established that disability which exists prior to a work-related injury is viewed as prior, active, and noncompensable in the context of a claim for the injury unless the injury, by itself, would have caused the entire disability. See *Fulkerson, supra; Wells v. Bunch,* Ky., 692 S.W.2d 806 (1985). However, as we observed in *Beale v. Stratton,* Ky., 779 S.W.2d 201, 202 (1989), the phrase "active disability" represents a judicial concept which has not appeared in the statutes. In *Campbell,* we not only recognized the principle that prior, active disability is noncompensable, we also recognized the longstanding principle that a worker who is rendered totally disabled by a combination of disabilities is entitled to be compensated for the whole of his disability. *See Teledyne, supra.* Where a prior injury is being compensated as a percentage of permanent, partial disability at the time the worker is rendered totally disabled by a subsequent work-related injury, the question to which our holding in *Campbell* is properly addressed is the extent to which disability attributable to the prior injury must be excluded from the total disability award. The Special Fund and GAB would have us exclude it as a percentage of the award for permanent, total disability. However, since we have reaffirmed the principle of *Campbell,* we conclude that the correct method for excluding the percentage of prior, active disability on the particular facts which are present in this appeal is to permit an offset against the liability of GAB and the Special Fund for the award of total disability to the extent that benefits paid by Liberty and the Special Fund pursuant to the partial disability award overlap the compensable period of the subsequent total disability award. In this way, there will be no duplicate compensation for the disability caused by the 1986 injury, each defendant will be held liable only for the disability which resulted from the injury for which it is liable, and claimant will be compensated for the whole of his disability at each point in time.

We have reaffirmed the finding that claimant became totally, occupationally disabled as a result of the 1990 injury. Therefore, when the holding of *Campbell* is properly applied to the present facts, claimant is entitled to an award pursuant to KRS 342.730(1)(a), as of the date of the 1990 injury, for the entire amount of his disability which is not excluded as a prior, active condition. To the extent that permanent, partial disability benefits paid pursuant to the 1986 award overlap the period of total disability, they will offset the liability of GAB and the Special Fund for benefits which would otherwise be due pursuant to the total disability award.

The decision of the Court of Appeals is hereby affirmed in part, reversed in part, and the claim is hereby remanded to the ALJ for further proceedings which are consistent with this opinion.

STEPHENS, C.J., and GRAVES, JOHNSTONE, LAMBERT and WINTERSHEIMER, JJ., concur.

COOPER, J., dissents by separate opinion.

COOPER, Justice, dissenting.

It is undisputed at this point that Appellee Brooks is 100% disabled and that his disability is apportioned as follows:

(1) 66⅔% due to the 1986 injury while the employer was insured by Liberty Mutual, which is apportioned 33⅓% against the employer (Liberty Mutual) and 33⅓% against the Special Fund;

(2) 33⅓% due to the 1990 accident while the employer was insured by GAB, which is apportioned 16⅔% against the employer (GAB) and 16⅔% against the Special Fund.

The issue is the rate and duration of compensation to be paid to Brooks for the 1986 and 1990 injuries and whether Brooks can be compensated for 100% disability following the 1990 injury. Permanent partial disability benefits are paid for 425 weeks at a rate equal to 66⅔% of the employee's average weekly wage (AWW), but not to exceed an award equal to 75% of the state AWW. KRS 342.730(1)(b). Total disability benefits are paid for life at a rate equal to 66⅔% of the employee's AWW, but not to exceed an award equal to 100% of the state AWW. KRS 342.730(1)(a).

Under the holding in *Campbell v. Sextet Mining Co.*, Ky., 912 S.W.2d 25 (1995), Brooks would be entitled to total disability benefits payable from the date of the 1986 injury, despite the fact that the 1986 injury did not render him totally disabled. The correct view is expressed in *Johnson v. Scotts Branch Coal Co.*, Ky.App., 754 S.W.2d 555 (1988), *i.e.*, an award of compensation for disability resulting from a prior injury cannot be enhanced because of the effects of a subsequent injury. Therefore, for the 1986 injury, Brooks is entitled to be paid only at the rate and for the duration allowed for permanent partial disability, regardless of the effect of his 1990 injury.

For his 1990 injury, Brooks is entitled to be paid at the rate and for the duration allowed for total disability, regardless of the fact that the 1990 injury would not itself have resulted in total disability. *Teledyne–Wirz v. Willhite*, Ky.App., 710 S.W.2d 858 (1986). However, any percentage of his present disability which represents prior active disability must be excluded in calculating the percentage of disability compensable for the 1990 injury. *Id.* at 860; *Transport Motor Express, Inc. v. Finn*, Ky., 574 S.W.2d 277 (1978); *Young v. Fulkerson*, Ky., 463 S.W.2d 118 (1971). Thus, the percentage of disability attributed to the 1986 injury for which Brooks is being compensated as a permanent partial disability must be excluded from the award for the 1990 injury.

Therefore, Brooks is entitled to a 66⅔% permanent partial disability award for the disability he incurred as a result of the 1986 injury and a 33⅓% award payable at the rate and for the duration of a total disability award for the disability he incurred as a result of the 1990 injury. Instead, the majority opinion merely reaffirms *Campbell, supra*, with a new twist. It (1) gives Brooks a 66⅔% permanent partial disability award payable by Liberty Mutual and the Special Fund from and after the date of the 1986 injury; then (2) gives him a 100% total disability award for the combined effects of both the 1986 and 1990 injuries, payable by GAB and the Special Fund from and after the date of the 1990 injury, subject to a credit for the amounts payable by Liberty Mutual and the Special Fund after the date of the 1990 injury for the balance of the permanent partial disability award for the 1986 injury. Thus, Brooks gets a 100% total disability award as a result of the 1990 injury which, absent the prior active disability for which he is being separately compensated, would have resulted in only a 33⅓% disability.

In essence, the majority has reaffirmed *Campbell*, except that the total disability payments are not to begin until after the date of the second injury and the liability previously imposed upon the first insurer has been shifted to the second insurer. I would overrule *Campbell* and award Appellant the compensation to which he is entitled by the statutory scheme and our pre-*Campbell* precedents. Therefore, I respectfully dissent.