Hurshel FLEMING, Appellant,

v.

William WINDCHY, Acting Director of Special Fund; Sun Glo Coal Company, Inc.; Trojan Mining, Inc.; Mine 25 Corporation; Mine 26 Corporation; Mine 26 Processing Corporation; Uninsured Employers Fund; Donna H. Terry, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 96–SC–100–WC.

Supreme Court of Kentucky.

April 24, 1997.

As Modified on Denial of Rehearing Oct. 30, 1997.

R. Rowland Case, Friend & Case, Pikeville, for Hurshel Fleming.

David W. Barr, Appellate Attorney, Louisville, for Special Fund.

Jeffrey D. Damron, Benita J. Riley, Riley & Damron, P.S.C., Prestonsburg, for Sun Glo Coal Company, Inc.

Clyde F. Johnson, Prestonsburg, for Trojan Mining, Inc.

D.B. Kazee, Kazee, Kinner & Chafin, Prestonsburg, for Mine 25 Corporation, Mine 26 Corporation, and Mine 26 Processing Corporation.

Dana C. Stinson, Frankfort, for Uninsured Employers Fund.

Donna H. Terry, Chief Administrative Law Judge, Frankfort, for Donna H. Terry.

Walter W. Turner, Commissioner, Department of Workers' Claims, Frankfort, for Workers' Compensation Board.

STUMBO, Justice.

On March 16, 1990, claimant injured his back at work while in the employ of Sun Glo Coal Company (Sun Glo). He was paid temporary, total disability (TTD) benefits until August 19, 1990, after which he returned to work despite continuing problems with his back. On April 9, 1991, claimant again injured his back at work while in the employ of Trojan Mining, Inc. (Trojan), the successor corporation to Sun Glo. Claimant was paid TTD benefits until July 30, 1991, but has not returned to work since that time. Claimant filed claims for permanent workers' compensation benefits for the 1990 and 1991 injuries. Prior injuries included a 1977 back injury, for which a 6% occupational disability was awarded, and a 1988 knee injury, for which a 10% occupational disability was awarded.

After reviewing the evidence, the Administrative Law Judge (ALJ) determined that the combined effects of all of his injuries had rendered claimant totally occupationally disabled but that 16% of the disability was prior, active, and noncompensable. The remaining 84% disability was attributed, equally, to the 1990 and 1991 injuries, with the ALJ observing that claimant's return to work after the 1990 injury was on a trial basis and that he had substantial difficulties performing his duties after that time. Liability for the 1990 injury was apportioned, equally, to Sun Glo and the Special Fund and ordered payable from August 20, 1990, for so long as claimant remained disabled. Whereas, liability for the 1991 injury was apportioned, equally, to Trojan and the Special Fund and ordered payable from July 1, 1991, for so long as claimant remained disabled.

The Special Fund petitioned for reconsideration, arguing that disability caused by a subsequent injury may not enhance the extent of liability for a prior injury. *Johnson v. Scotts Branch Coal Co.*, Ky.App., 754 S.W.2d 555 (1988). Hence, the 1991 injury should not enhance the payment period for the 1990 injury. The petition was overruled, and the Special Fund appealed.

The Workers' Compensation Board (Board) was persuaded by the argument that *Johnson* prohibited treating the award for the 1990 injury as a percentage of total disability since claimant did not actually become totally disabled until 1991. Therefore, the Board reversed the award to that extent, rejecting claimant's argument that since he was totally disabled, he was entitled to lifetime benefits for both injuries. Claimant appealed.

The Court of Appeals affirmed the decision of the Board, emphasizing that an award of lifetime benefits for the 1990 injury was inconsistent with the ALJ's findings. Although the ALJ had found that claimant's return to work after the 1990 injury was only on a trial basis, the ALJ had not determined that claimant was totally disabled after the injury. Furthermore, the fact that claimant had been able to return to his former job for some eight months after the injury indicated that he was not totally disabled at that time. Therefore, the Court of Appeals concluded that claimant was entitled to receive only

partial disability benefits for 425 weeks for the 1990 injury and that lifetime benefits should begin only after the 1991 injury.

In a concurring opinion, Judge Johnson noted that although *Brownies Creek Collieries v. Lingar*, Ky.App., 794 S.W.2d 641 (1990), was cited by the claimant, it actually supported the decision of the Board. In that case, the award of total disability did not commence until November 27, 1985, the injured worker's last day of work. *Id.* at 642.

Claimant now appeals to this Court, arguing that since the claims for the 1990 and 1991 injuries were litigated together and since the two injuries rendered him totally disabled, the decision in *Campbell v. Sextet Mining Co.*, Ky., 912 S.W.2d 25 (1995), controls these facts. Therefore, he asserts that he is entitled to have benefits for both injuries computed as a percentage of total disability, pursuant to KRS 342.730(1), and paid for life. By contrast, Sun Glo (the 1990 employer) and the Special Fund present several arguments in support of the premise that this Court's decision in *Campbell* was erroneous and should be reconsidered.

First, Sun Glo emphasizes that claimant was only partially disabled after the 1990 injury and that he did not, in fact, become totally disabled until after sustaining the subsequent injury in 1991. Therefore, he was not entitled to benefits for total disability until that time. Sun Glo argues that the extent of an employer's liability for an injury cannot be enhanced by a subsequent injury which was incurred in a subsequent employment and that the Court's basis for distinguishing *Johnson* was meaningless in view of the case's holding. Furthermore, Sun Glo argues that the Court's reliance on *Beale v. Shepherd*, Ky., 809 S.W.2d 845 (1991), and on prior cases which involved combined claims for occupational disease and injury was misplaced and that those cases do not support enhancing an employer's liability by virtue of disability resulting from a subsequent injury which was incurred in a subsequent employment. Second, Sun Glo emphasizes that the partial disability caused by the 1990 injury clearly constituted a prior, active condition at the time the 1991 injury occurred. Any attempt by *Campbell* to treat it otherwise is

contrary to the longstanding definition of the term. Third, Sun Glo argues that *Campbell* results in the inconsistent treatment of workers depending upon whether successive injuries which result in total disability are litigated together or sequentially. Finally, Sun Glo argues that if the Court reaffirms the decision in *Campbell*, the Special Fund should be held liable under the principle of "excess disability" for the difference between a 21% permanent, partial disability award, payable for 425 weeks, pursuant to KRS 342.730(1)(b), and whatever benefits are awarded for disability attributable to the 1990 injury. *See* KRS 342.120(6), (7).

The Special Fund agrees with Sun Glo that the decision in *Johnson* provides a blanket prohibition against the consideration of any subsequent disability to enhance the duration of an award. Furthermore, the Special Fund asserts that the ALJ's award of lifetime benefits for the 1990 injury, despite the fact that claimant continued to work thereafter, was contrary to *Osborne v. Johnson*, Ky., 432 S.W.2d 800 (1968), as well as to *Lingar, supra*, at 642. Finally, the Special Fund asserts that the decision in *Campbell* "muddied the law of excess disability."

The source of the controversy in this case, as in *Campbell*, is the fact that, although KRS 342.730 provides compensation for both partial and total disabilities which are permanent, awards for partial disability are payable at a lower maximum rate and for a shorter duration than awards for total disability. Permanent, partial occupational disability is compensable for 425 weeks, at the rate of 66⅔% of the worker's average weekly wage multiplied by the percent of occupational disability, and limited to 75% of the state's average weekly wage. KRS 342.730(1)(b). Whereas, permanent, total disability is compensable for life (so long as the worker remains totally disabled), at the rate of 66⅔% of the worker's average weekly wage, and is limited to 100% of the state's average weekly wage. KRS 342.730(1)(a); *Stovall v. Williams*, Ky.App., 675 S.W.2d 6 (1984). In *Teledyne–Wirz v. Willhite*, Ky.App., 710 S.W.2d 858 (1986), the court determined that the whole of the worker's disability, including any noncompensable, prior, active disability,

was to be considered when determining whether benefits for a compensable disability should be awarded pursuant to KRS 342.730(1)(a) or (b). *Id.* at 859. Hence, before the decision in *Campbell,* a worker who was receiving (or entitled to receive) benefits for a partially disabling injury at the time he was rendered totally disabled by a subsequent injury was awarded lifetime benefits pursuant to KRS 342.730(1)(a), but only for the percentage of disability directly attributable to the last injury. In Mr. Campbell's case, despite the fact that he had become totally, occupationally disabled, the lifetime award would have been only for a 10% occupational disability. In the instant case, the lifetime award would be only for a 42% occupational disability, despite the fact that the final injury rendered claimant totally, occupationally disabled.

■ In deciding *Campbell,* we noted that we were presented "with an extremely narrow issue." *Campbell, supra* at 26. That issue was whether a worker was permitted to receive lifetime benefits pursuant to KRS 342.730(1)(a) for the combined effects of work-related injuries which occurred in different years and which rendered him totally occupationally disabled. Agreeing with the arguments advanced by the injured workers in seeking benefits for total disability, we held that:

since the ALJ in both of these appeals made factual findings of total disability that are supported by the record, we should enforce the legal effect of these findings and direct the entry of an award for lifetime benefits for the entire amount of disability not excluded as a prior active condition.

*Id.* However, further reflection makes it apparent that, in addressing the application of the holding to the facts of the case, we strayed from our "extremely narrow" holding when we indicated that disability caused by successive injuries which combine to render the worker totally disabled should be treated as though the injuries were suffered at the same time and also when we indicated that a rationale for the decision was the fact that the claims for the two injuries were prosecuted together. *Id.* at 27. To that extent, we

erred. Nonetheless, we remain committed to the principle embodied in the holding, that a worker who is rendered permanently and totally disabled by a work-related injury which occurs during the compensable period of a prior, work-related injury is entitled to an award of lifetime benefits, computed pursuant to KRS 342.730(1)(a), for the entire amount of disability not excluded as a prior, active condition.

■ Claimant asserts that *Campbell* stands for the proposition that he is entitled to lifetime benefits for both the 1990 and 1991 injuries. However, as asserted by Sun Glo and the Special Fund and as recognized in *Lingar,* a worker is not entitled to benefits for total disability until such time as he becomes totally disabled. Likewise, a defendant may not be held liable for any additional occupational effect which results from the fact that a subsequent disabling injury is superimposed upon the injury for which the defendant is liable. *Johnson, supra.* Hence, notwithstanding any confusion created by our opinion in *Campbell,* we agree that the award for the 1990 injury may extend only for 425 weeks, with benefits payable at the 1990 rate pursuant to KRS 342.730(1)(b). To that extent, we affirm the decision of the Court of Appeals.

■ Contrary to the assertions made by the Special Fund, we are not persuaded that the holding of *Campbell* does violence to the principle of "excess disability." KRS 342.120(6) provides that where the combined effect of a worker's previous disability and a new injury results in a greater overall degree of disability that the latest injury, alone, would have caused, the employer is liable only for the percentage of disability attributable to the latest injury. Pursuant to KRS 342.120(7), that greater disability which results from the combined effect of the latest injury superimposed upon a previous disability is apportioned to the Special Fund. Generally, the term "excess disability" refers to the extent to which the whole of a worker's disability from the combination of prior, active disability and the subject injury exceeds the sum of any prior, active disability and the disability which the subject injury, by itself, would have caused. The method for appor-

tioning liability where a subsequent injury, by itself, would not have caused the worker's entire disability was set forth in *Young v. Fulkerson*, Ky., 463 S.W.2d 118 (1971). *See also Yocom v. Spalding*, Ky., 547 S.W.2d 442 (1977), and *Ligon Preparation Plant Co. v. Hamilton*, Ky., 482 S.W.2d 762 (1972) which addressed the concept of excess disability with regard to KRS 342.120(3) and (4), (now embodied in KRS 342.120(6) and (7)).

■ In *Campbell*, as in the instant case, a subsequent work-related injury rendered the worker totally disabled during the compensable period for a prior, partially disabling work-related injury. Here, the sum of claimant's 16% noncompensable disability and the percentages of occupational disability attributed to the 1990 and 1991 injuries totals 100%. However, since the 1991 injury rendered claimant totally, occupationally disabled, the occupational effect of the injury exceeded that which would have been the case had there been no prior disability. The occupational effect of the 1991 injury was twofold. First, together with the arousal of ongoing degenerative back problems, it accounted for 42% of claimant's permanent, total disability. Second, due to the differences in KRS 342.730(1)(a) and (b), it caused the 1990 injury, which was being compensated as only a 42% permanent, partial disability, to become 42% of a permanent, total disability. It is this second effect which the Special Fund would have us ignore but which we determined, in *Campbell*, should be compensable.[1] We are aware that, in doing so and in placing liability on the Special Fund pursuant to KRS 342.120(6) and (7), we broadened the concept of "excess disability."[2] However, we are not persuaded that we erred in doing so.

■ It has long been established that disability which exists prior to a work-related injury is viewed as prior, active, and noncompensable in the context of a claim for the injury, unless the injury, by itself, would have caused the entire disability. See *Fulkerson, supra; Wells v. Bunch*, Ky., 692 S.W.2d 806 (1985). However, as we observed

in *Beale v. Stratton*, Ky., 779 S.W.2d 201, 202 (1989), the phrase "active disability" represents a judicial concept which has not appeared in the statutes. In *Campbell*, we not only recognized the principle that prior, active disability is noncompensable, we also recognized the longstanding principle that a worker who is rendered totally disabled by a combination of disabilities is entitled to be compensated for the whole of his disability. Where a prior injury is being compensated as a percentage of permanent, partial disability at the time the worker is rendered totally disabled by a subsequent work-related injury, the question to which our holding in *Campbell* is properly addressed is the extent to which disability attributable to the prior injury must be excluded from the total disability award. The Special Fund would have us exclude it as a percentage of the award for permanent, total disability, as did the Court of Appeals in this case. However, since we have reaffirmed the principle of *Campbell*, we conclude that the correct method for excluding the percentage of prior, active disability on these facts is to permit an offset against Trojan's and the Special Fund's liability pursuant to the award of total disability to the extent that benefits paid by the defendants pursuant to the partial disability award overlap the compensable period of the subsequent total disability award. In this way, there will be no duplicate compensation for the disability caused by the 1990 injury, each defendant will be held liable only for the disability which resulted from the injury for which it is liable, and claimant will be compensated for the whole of his disability at each point in time.

It is not disputed that claimant became totally, occupationally disabled as a result of the 1991 injury. Therefore, when the holding of *Campbell* is properly applied to the present facts, claimant is entitled to an award pursuant to KRS 342.730(1)(a), as of the date of the 1991 injury, for the entire amount of his disability which is not excluded as a prior, active condition. The ALJ excluded a 16% disability for injuries which oc-

---

1. Trojan has not filed a brief in this appeal.

2. Here, it is undisputed that liability is apportioned equally between Trojan and the Special Fund pursuant to KRS 342.1202(1).

curred before 1990 and for which claimant had been fully compensated. That exclusion is undisputed. To the extent that permanent, partial disability benefits payable pursuant to the 1990 award overlap the period of total disability, they will offset Trojan's and the Special Fund's liability for benefits which would otherwise be due pursuant to the total disability award.

The decision of the Court of Appeals is hereby affirmed in part, and reversed in part, and the claim is hereby remanded to the ALJ for further proceedings which are consistent with this opinion.

STEPHENS, C.J., and GRAVES, JOHNSTON, LAMBERT and WINTERSHEIMER, JJ., concur.

COOPER, J., dissents by separate opinion.

COOPER, Justice, dissenting.

It is undisputed at this point that Appellant is 100% disabled and that his disability is apportioned as follows:

(1) 16% active disability which existed prior to the 1990 injury and which all agree is noncompensable;

(2) 42% due to the 1990 injury while employed by Sun Glo, which is apportioned 21% against Sun Glo and 21% against the Special Fund;

(3) 42% due to the 1991 accident while employed by Trojan, which is apportioned 21% against Trojan and 21% against the Special Fund.

The issue is the rate and duration of compensation to be paid to Appellant for the 1990 and 1991 injuries and the extent of the Special Fund's liability for so-called "excess disability." Permanent partial disability benefits are paid for 425 weeks at a rate equal to 66⅔% of the employee's average weekly wage (AWW), but not to exceed an award equal to 75% of the state AWW. KRS 342.730(1)(b). Total disability benefits are paid for life at a rate equal to 66⅔% of the employee's AWW, but not to exceed an award equal to 100% of the state AWW. KRS 342.730(1)(a).

Under the holding in *Campbell v. Sextet Mining Co.*, Ky., 912 S.W.2d 25 (1995), Ap-

pellant would be entitled to total disability benefits payable from the date of the 1990 injury, despite the fact that the 1990 injury did not render him totally disabled. The correct view is expressed in *Johnson v. Scotts Branch Coal Co.*, Ky.App., 754 S.W.2d 555 (1988), *i.e.*, an award of compensation for disability resulting from a prior injury cannot be enhanced because of the effects of a subsequent injury. Therefore, for the 1990 injury, Appellant is entitled to be paid only at the rate and for the duration allowed for permanent partial disability, regardless of the effect of his 1991 injury.

For his 1991 injury, Appellant is entitled to be paid at the rate and for the duration allowed for total disability, regardless of the fact that the 1991 injury would not itself have resulted in total disability. *Teledyne–Wirz v. Willhite*, Ky.App., 710 S.W.2d 858 (1986). However, any percentage of his present disability which represents prior active disability must be excluded in calculating the percentage of disability compensable for the 1991 injury. *Id.* at 860; *Transport Motor Express, Inc. v. Finn*, Ky., 574 S.W.2d 277 (1978); *Young v. Fulkerson*, Ky., 463 S.W.2d 118 (1971). That includes not only the 16% prior active disability which existed prior to the 1990 injury, but also the 42% permanent partial disability which resulted from the 1990 injury and for which he is being separately compensated.

Therefore, Appellant is entitled to a 42% permanent partial disability award payable at the partial disability rate and duration for the disability he incurred as a result of the 1990 injury, and a 42% permanent partial disability award payable at the total disability rate and duration for the disability he incurred as a result of the 1991 injury. Instead, the majority opinion merely reaffirms *Campbell*, *supra*, with a new twist. It (1) gives Appellant an 84% permanent partial disability award payable at the total disability rate and duration for the combined effects of both the 1990 and 1991 injuries, payable after the date of the 1991 injury; (2) limits Sun Glo's liability for the 1990 injury to the permanent partial disability rate and duration; (3) labels the 42% of Appellant's present disability attributable to the 1990 injury as "excess disability" instead of prior active

(noncompensable) disability; and (4) requires the Special Fund to pay the 42% "excess" at the total disability rate and duration, (5) subject to a credit for amounts payable by the Special Fund for the balance of the permanent partial award for the 1990 injury. Thus, Appellant gets an 84% total disability award as a result of the 1991 injury which, absent the prior active disability, would have resulted in only a 42% disability. Under this logic, we should additionally compensate him for the 16% disability which existed prior to the 1990 injury, but which is also contributing to his present total disability.

The majority has misconstrued the concept of "excess disability." Under KRS 342.120(6) and (7), "excess disability" occurs when the combined effects of two separate injuries results in a percentage of disability which exceeds the sum of the percentages resulting from each separate injury. In that situation, the disability caused by the prior injury is noncompensable, the disability caused by the subsequent injury is paid by the employer, and the "excess disability" is paid by the Special Fund. *Beale v. Faultless Hardware*, Ky., 837 S.W.2d 893 (1992); *Young v. Fulkerson, supra.* There is no excess disability issue in this case. Appellant is being separately compensated for the effects of both injuries according to the statutory scheme applicable to each separate injury. The majority's characterization of the percentage of disability attributable to the 1990 injury as "excess disability" with respect to the 1991 injury is simply a pretense to justify compensating him in two different ways for the same injury.

In essence, the majority has reaffirmed *Campbell*, except that the total disability payments are not to begin until after the date of the second injury and the liability previously imposed upon the first employer has been shifted to the Special Fund. I would overrule *Campbell* and award Appellant the compensation to which he is entitled by the statutory scheme and our pre-*Campbell* precedents. Therefore, I must respectfully dissent.