**PHOENIX MANUFACTURING COMPANY, as Insured by AIK Selective Self–Insurance Fund, Appellant,**

v.

**Sallie JOHNSON; Phoenix Manufacturing Company, as Insured by Liberty Mutual Insurance Group; Robert L. Whittaker, Director of Special Fund; J. Landon Overfield, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 2001–SC–0218–WC.

Supreme Court of Kentucky.

Dec. 20, 2001.

Case Ordered Published by Supreme Court March 21, 2002.

Carla Foreman Dallas, Louisville, Counsel for Appellant.

John F. Anderson, Cole, Cole & Anderson, PSC, Barbourville, Counsel for Appellee Johnson.

W. Barry Lewis, Hazard, Counsel for Appellee Phoenix Manufacturing as Insured by Liberty Mutual Insurance Group.

Joel D. Zakem, Labor Cabinet—Special Fund, Frankfort, Counsel for Appellee Whittaker.

### OPINION OF THE COURT

The claimant injured the same area of her lower back in 1989 and in 1992 while working for the defendant-employer. She later settled the claims with the Special Fund and with the insurance carrier that covered the employer's liability for each of the respective injuries, but after undergoing surgery for a herniated disc, she moved to reopen the claims. An Administrative Law Judge (ALJ) later determined that the claimant's disability had increased since the settlement and had become total, that half of each injury was due to the arousal of a degenerative condition, and that a progression of each injury was equally responsible for the ultimate disability. Liability for income benefits was

apportioned 25% to Liberty Mutual Insurance Group (the 1989 carrier), 25% to AIK Selective Self Insurance Fund (the 1992 carrier), and 50% to the Special Fund; whereas, liability for medical benefits was apportioned equally to the two carriers. The questions presented by this appeal concern whether the Workers' Compensation Board (Board) and the Court of Appeals properly affirmed the finding of increased disability since the settlement, whether they properly determined that the 1992 carrier should have been held responsible for all medical benefits, and whether the Court of Appeals properly determined that the 1992 carrier and the Special Fund should have been held equally responsible for all income benefits.

In 1989, the claimant injured her lower back while picking up rolls of cloth to put them on a pallet. Dr. Brooks prescribed physical therapy and later released her to return to work without restrictions, which she did. Although a flare-up of symptoms in 1990 caused her to miss seven months of work, she worked without incident until 1992 when she again injured her back while lifting. This injury caused more severe symptoms, and although Drs. Brooks and Gumbert both thought that she could perform light to sedentary work, the claimant was convinced that she could not.

The claims for the two injuries were consolidated, and on April 4, 1994, agreements to settle the claims were approved by an ALJ. With regard to the 1989 injury, the parties agreed to income benefits based upon a 37.5% disability, with liability apportioned 20% to the 1989 carrier and 17.5% to the Special Fund. The agreement also provided, in pertinent part, as follows:

> The insurance carrier for the 1989 injury and adjusting agency for the 1992 injury for the Defendant–Employers [sic] agree that each will be responsible for one-half of the Plaintiff's medical expenses related to treatment of her work related injured [sic], with the Plaintiff being required to submit her medical bills and expenses to the adjusting agency for the employer for the November 26, 1992, injury who shall in turn pay same and be entitled to reimbursement for one-half of the medical expenses it has paid on behalf of the Plaintiff.

The agreement was signed by the attorneys for the 1989 and 1992 carriers, the claimant, her attorney, and an attorney for the Special Fund. A separate agreement concerning the 1992 injury provided for income benefits for a 40% disability, with 20% to be paid by the 1992 carrier and 20% by the Special Fund.

On April 3, 1998, the claimant moved to reopen the settlements, asserting that she had undergone surgery in 1996 and that her condition had worsened to the point that she was totally disabled by increased pain and numbness in her right leg. She testified to the deterioration of her condition between 1994 and the reopening.

Dr. Brooks treated the claimant after both injuries and testified that her symptoms and loss of range of motion were much more severe in 1992. He assigned a 15% functional impairment, attributing 8% to the 1992 injury (4% to the injury and 4% to the arousal of the degenerative condition) and 7% to the 1989 injury (3.5% to the injury and 3.5% to the arousal of the degenerative condition). In his opinion the claimant's condition had worsened since 1994, and she was now totally disabled.

Dr. Keifer testified that he had performed surgery to repair a large herniated disc at L5–S1. He indicated that medical records revealed some evidence of disc bulging and a possible protrusion in 1989. He thought that the herniation resulted from degenerative disc disease that existed

even before the 1989 injury but that although the injury did not directly cause the herniation, it did contribute to the progression of the underlying degenerative condition. In his opinion, the claimant's need for surgery and her current impairment were due to the work-related injuries and their arousal or aggravation of the pre-existing degenerative changes.

Testifying for the employer, Dr. Ensalada reviewed the medical records. In his opinion, there was no evidence of a worsening of the claimant's condition from the 1989 injury. Recent changes in her lumbar spine were not a result of the 1989 injury, and the 1996 surgery was not necessitated by the 1989 injury.

■ After reviewing the evidence, the ALJ determined that the claimant sustained an increase in occupational disability since the settlement, that it was entirely due to the effects of her injuries, that she had become totally disabled, and that she had no pre-existing active disability. Pointing to Dr. Keifer's testimony, the ALJ noted that the claimant had pre-existing dormant nondisabling degenerative disc disease before either injury and that "both injuries aroused the dormant condition and created the condition which required surgical treatment." Therefore, based upon Dr. Keifer's opinions and the settlement agreement, the ALJ concluded that both carriers were equally liable for the surgery and related medical care. Likewise, based on Dr. Keifer's testimony, the ALJ attributed the claimant's increased disability to a combination of the two injuries and to a "progression of the injured state of Plaintiff's lumbar disc which was caused by the work-related injuries."

Although recognizing that the entire 425-week period following the 1989 injury had already expired, the ALJ pointed out that the claimant's disability "is not caused by a subsequent intervening event after her settlement but the natural progression of her injury" and that in a reopening, she could recover an award for total disability against the 1989 carrier. Therefore, because the ALJ was persuaded that the 1989 injury accounted for half of the claimant's total disability, the ALJ concluded that the 1989 award could be reopened. As a result, each carrier was held liable for 25% of the total disability award, and the Special Fund was held liable for the remaining 50%.

The employer points out that the claimant asserted a total disability during litigation of the initial claims and argues that she was no worse off at reopening than she was when she settled the claims. Nonetheless, both the Board and the Court of Appeals have affirmed the finding that the claimant's occupational disability increased between the settlement and reopening, pointing to testimony by Drs. Brooks and Gumbert as being substantial evidence that the claimant could perform light to sedentary work in 1994 but was totally disabled at reopening. They also viewed the testimony as supporting a finding that the percentages of disability for which the claims were settled were accurate. Having reviewed the evidence and the arguments of the parties, we conclude that the carriers have failed to establish that any relevant testimony was overlooked or misunderstood or that the view of the evidence that was taken by the ALJ was so unreasonable that it must be viewed as being erroneous as a matter of law. *Western Baptist Hospital v. Kelly*, Ky., 827 S.W.2d 685 (1992); *Special Fund v. Francis*, Ky., 708 S.W.2d 641, 643 (1986). Under those circumstances, the findings were properly affirmed on appeal.

Noting that the 425-week period for which income benefits were authorized for the 1989 injury had expired before the

claims were reopened, the Board determined that the 1989 carrier could be held liable for additional income benefits only if a worsening of the 1989 injury, by itself, would have been sufficient to result in total disability. *See Hodgkin v. Webb,* 310 Ky. 745, 221 S.W.2d 664 (1949). In view of the fact that the record contained no evidence to support a finding with regard to the matter, a majority of the Board remanded for the taking of further proof. However, relying on *Whittaker v. Fleming,* Ky., 25 S.W.3d 460 (2000), (*Fleming* II), and *Fleming v. Windchy,* Ky., 953 S.W.2d 604 (1997), (*Fleming* I), the Court of Appeals reversed the Board concerning the carriers' liability for income benefits, determined that the 1992 carrier was liable for the employer's entire 50% of the award, and determined that a remand for the taking of further proof was erroneous and unnecessary.

■ In *Fleming* I, we determined that a workers' compensation defendant could not be held liable for any additional occupational effect that results from the fact that a subsequent disabling injury is superimposed on the injury for which the defendant is liable. We explained, therefore, that where a worker was rendered totally disabled after sustaining successive injuries, each of which by itself was only partially disabling, the award for the first injury was payable as a partial disability for 425 (or 520) weeks. However, we also reaffirmed the principle of *Campbell v. Sextet Mining Co.,* Ky., 912 S.W.2d 25 (1995), that where a partially disabling injury occurs within the compensable period of a previous work-related injury, and the combined effects of the injuries render the worker totally disabled, the worker is entitled to be compensated for his entire disability. We determined, therefore, that benefits for total disability were payable after the second injury and that the prior,

active disability that resulted from the first injury should be excluded from the award only to the extent that any partial disability benefits overlapped the period of total disability. The claim arose before December 12, 1996, and, therefore, we viewed the liability that resulted from excluding only the overlapping benefits rather than the percent of disability that was caused by the first injury as being a form of "excess disability" and as being the liability of the Special Fund. *Fleming* II pointed out, however, that when enacting KRS 342.1202, the legislature limited the Special Fund's liability in a back injury claim to 50%, regardless of the extent to which a prior back condition contributed to the worker's ultimate disability.

The instant case involved a reopening, and although the 1992 injury occurred within the compensable period of the 1989 injury, the period had expired by the time the claims were reopened. Under those circumstances, there were no overlapping partial disability benefits to credit against the total disability award. Thus, the Court of Appeals correctly determined that the entire liability fell equally to the 1992 carrier and the Special Fund and that there could be no exclusion for prior, active disability.

■ The final matter at issue concerns whether the equal apportionment of medical expenses between the carriers was properly reversed by the Board. Contrary to the views that were expressed by the Board and the Court of Appeals, we are not persuaded that *Derr Construction Co. v. Bennett,* Ky., 873 S.W.2d 824 (1994), controls these facts. In *Derr v. Bennett* we rejected an argument that the Special Fund could be held responsible for a portion of the expenses for medical treatment of a gradual injury simply because it was sustained in multiple employments. Although we recognized that it might seem

harsh to place all liability for future medical treatment on the last employer in such circumstances, we noted that KRS 342.020 referred only to the employer and not to the Special Fund.

*Derr v. Bennett* did not address the liability of an employer's successive insurance carriers. Furthermore, of particular significance in the instant case is the fact that, when settling the claims in 1994, the carriers agreed to share medical expenses equally. Nothing in *Derr v. Bennett* would support releasing the 1989 carrier from its agreement to reimburse the 1992 carrier for half of the claimant's medical expenses, and nothing in the agreement limited its effect to medical expenses that were outstanding at the time. The ALJ determined that the claimant's surgery was necessitated by the combined effects of the injuries and specifically referred to the settlement agreement when apportioning liability equally between the carriers. Under the circumstances, we find no error in the ALJ's decision to do so. To that extent we reverse the decision of the Court of Appeals and reinstate the decision of the ALJ.

The decision of the Court of Appeals is affirmed, in part, and reversed, in part, and the claim is remanded to the ALJ for the entry of an award of total disability for which the 1992 carrier and the Special Fund bear equal liability.

LAMBERT, C.J., and GRAVES, JOHNSTONE, KELLER, STUMBO, and WINTERSHEIMER, JJ., concur.

COOPER, J., concurs, in part, and dissents, in part, by separate opinion.

COOPER, Justice, Concurring, in Part, and Dissenting, in Part.

I dissent from the majority opinion insofar as it reaffirms the holdings in *Fleming v. Windchy*, Ky., 953 S.W.2d 604 (1997) and *Whittaker v. Fleming*, Ky., 25 S.W.3d 460 (2000) per my dissents in those cases and in *Spurlin v. Brooks*, Ky., 952 S.W.2d 687 (1997).