**SEARS ROEBUCK & COMPANY,**
Appellant

v.

**Bobby DENNIS; Bonnie Kittenger, Administrative Law Judge; Radio Shack; Workers' Compensation Funds; and Workers' Compensation Board, Appellees.**

and

**Radio Shack, Cross–Appellant**

**Bobby A. Dennis; Bonnie C. Kittinger, Administrative Law Judge; Sears Roebuck & Company; Workers' Compensation Funds; and Workers' Compensation Board, Cross–Appellees.**

Nos. 2003–CA–002056–WC,
2003–CA–002217–WC.

Court of Appeals of Kentucky.

March 12, 2004.

---

5. *Anderson, supra,* n. 3, at 196. (Internal quotations and citations omitted.)

6. *Supra,* n. 4.

7. Ky.App., 828 S.W.2d 668 (1992).

8. *Supra,* n. 3.

352

Kamp T. Purdy, Lexington, KY, for appellant Sears.

W. Barry Lewis, Hazard, KY, for cross-appellant Radio Shack.

Larry Duane Ashlock, Lexington, KY, for appellee Bobby Dennis.

David W. Barr, Frankfort, KY, for appellee Workers' Compensation Funds.

Before COMBS, KNOPF, and McANULTY, Judges.

## OPINION

COMBS, Judge.

Sears Roebuck and Company (Sears) petitions and Radio Shack cross-petitions for review of an opinion of the Workers' Compensation Board (Board) that affirmed in part, reversed in part, and remanded an opinion of the Administrative Law Judge (ALJ). The two former employers of appellee Bobby Dennis contest the Board's determinations with respect to their liability for disability and medical benefits. Sears challenges the Board's conclusion that it is liable to Dennis for permanent total occupational disability benefits. Radio Shack contends that the Board erred in affirming the ALJ's apportionment of medical benefits. Finding no error, we affirm.

The facts giving rise to these appeals are not in dispute. Prior to his employ-

ment at Radio Shack, Dennis had sustained several injuries resulting in some degree of active disability. He began working for Radio Shack in 1993. In 1995, he fell from a ladder onto a concrete floor at work, suffering a serious injury affecting his neck, shoulder, and back. He sought workers' compensation benefits for the disability resulting from that injury and was determined to be 30% occupationally disabled. One-third of the disability (10%) rating was attributed to Dennis's prior active disability and was non-compensable. Benefits for the remaining disability (20%) were apportioned equally between the employer and the Special Fund, the predecessor to the appellee Workers' Compensation Funds (WCF).

Dennis ceased employment with Radio Shack in 1998. He subsequently worked for several different employers, including Sears. In January 2000, he began work as a salesman in the tire department of Sears. He was still having significant back problems related to his 1995 injury when he started working for Sears. However, the ALJ believed Dennis's testimony that Sears was aware of his back condition when it hired him and that it promised to accommodate his work restrictions—including that he avoid heavy lifting.

Nonetheless, Dennis was required to lift heavy tires, and on two occasions—December 7, 2000, and October 23, 2001—that lifting resulted in injury to his back. The latter incident occurred after his managers insisted that he work 14 straight hours while ignoring his complaints of pain and requests to be allowed to go home.

Dennis did not work following the October 2001 incident. He filed a new workers' compensation claim against Sears based on the two injuries to his back as well as a psychological impairment. He also moved to reopen his 1995 claim against Radio Shack due to a worsening of

his back impairment since the previous award. The new claim and the reopened claim were consolidated before the ALJ.

After reviewing and outlining extensive medical evidence, the ALJ found that Dennis was totally occupationally disabled. That determination is not challenged in this appeal. In reaching that conclusion, the ALJ found that Dennis had sustained:

> *both* an increase in occupational disability as a result of his 1995 injuries and a permanent impairment from his October 23, 2001, injury.

(ALJ's opinion, award and order, November 1, 2002, p. 17, emphasis added.) Specifically, the ALJ determined as follows: (1) that 10% of the total disability was attributable to an active disability pre-dating his employment at Radio Shack; (2) that 5% of the disability was due to a psychological impairment "directly attributable to his injury sustained" at Sears (*Id.*); and (3) that the remaining 85% of Dennis's occupational disability resulted from a worsening of his 1995 Radio Shack injury. Accordingly, the ALJ ordered Sears to pay disability benefits at the rate of 5% for life while ordering Radio Shack and the Workers' Compensation Funds to pay the remaining 85% for life—again, apportioned equally.

On reconsideration, the ALJ clarified her award of medical benefits and found Radio Shack liable for payment of all medical expenses related to Dennis's shoulder, neck, and back problems (except for the medical bills incurred during the period of October 23, 2001, and December 11, 2001). Sears was responsible for only those medical expenses necessary to treat Dennis's psychological impairment.

Both employers and the WCF appealed to the Board. Radio Shack and the WCF contended that the ALJ erred in requiring them to pay lifetime benefits. Radio

Shack also argued: (1) that the evidence did not support the ALJ's finding of an increase in occupational disability since the 1998 award and (2) that the ALJ erred as a matter of law in apportioning the award of medical expenses. Sears argued that the ALJ erred in finding it liable for a 5% psychological impairment because it was not based on a traumatic event occurring during Dennis's tenure at Sears for which an impairment rating had been assigned.

In its review, the Board rejected Sears's contention with respect to its liability for the psychological impairment as follows:

> There is no requirement the physical injury must result in an impairment rating before a psychological condition can be compensable. The correct standard is set forth in *Lexington–Fayette Urban County Government v. West,* Ky., 52 S.W.3d 564 (2001). There, the court found a psychological claim must arise from a physically traumatic event with such event being one that involved physical trauma. Here, the ALJ concluded Dennis had sustained an injury at Sears on October 23, 2001. His exertion involved pulling tires and lifting them for 14 to 15 hours and would constitute a physically traumatic event. Since Dr. Steger opined Dennis did not have an active psychiatric impairment prior to this injury, there is substantial evidence to support the ALJ's conclusion that Sears is liable for benefits related to the psychological condition.

However, the Board agreed with the argument advanced by Radio Shack and WCF that the ALJ had erred in holding them responsible for the payment of permanent benefits. The Board analyzed *Fleming v. Windchy,* Ky., 953 S.W.2d 604 (1997), *Whittaker v. Fleming,* Ky., 25 S.W.3d 460 (2000), and *Spurlin v. Brooks,* Ky., 952 S.W.2d 687 (1997), and concluded as follows:

> [C]laimants who are rendered totally disabled by a series of work injuries with different overlapping awards are to receive benefits that correspond to the whole of their disability *on the date that disability begins.* Generally, if a worker has a disability for which he is receiving benefits, or is so entitled at the time his permanent total disability manifests, then the employer liable for the subsequent total disability award receives a dollar-for-dollar offset for permanent partial disability benefits paid from and after the date total disability benefits are scheduled to begin. However, where a subsequent injury occurs and the worker is determined to be totally and permanently disabled, the amount and duration of an award for a prior condition may not be extended beyond that allowed under the Act for permanent partial disability if the first injury is combined with the subsequent injury to find total disability. Liability for the injured worker's total disability award falls to the employer or carrier when the subsequent injur[y] occurred with a dollar-for-dollar credit permitted for any prior overlapping permanent partial disability awards, and the extent and duration of that total award is determined as of the date of the last work-related injury. The fact that a prior active disability contributes to the injured worker's total disability does not alter this analysis. A reopening for the prior injury is of no consequence except for purposes of calculating the overlapping credit attributable to any increase in permanent partial disability from the prior order or award. Any new award as a result of the reopening can only be for permanent partial disability regardless of whether the earlier injury is a contributing factor in concert with the final injury producing the injured worker's total disability. After the expiration of any overlapping

period of permanent partial disability, the original overlapping dollar amount becomes excess disability and becomes the liability of the workers' compensation insurance carrier legally responsible for the final injury for so long as the claimant is disabled.

(Workers' Compensation Board's opinion entered August 27, 2003, pp. 16–17; emphasis in original.)

Thus, the Board affirmed the determination that Dennis was totally occupationally disabled, but it reversed the ALJ's decision with respect to the employers' liability for the award of income benefits. In the opinion from which these appeals have been taken, the Board remanded the matter to the ALJ for entry of an order holding Radio Shack and WCF responsible for increased benefits only "from the date of the motion to reopen for the remainder of the permanent partial disability period." Sears was found to be responsible for the award of total occupational disability benefits for as long as Dennis is disabled with a credit for the amounts paid by Radio Shack and the WCF during the time that the two awards overlapped.

In its appeal, Sears argues that the Board erred in reversing the ALJ's decision with respect to liability for the award of income benefits. As reflected in the ALJ's findings, the evidence established that the overwhelming majority of Dennis's occupational disability was due to the 1995 injury at Radio Shack. Consequently, Sears vigorously contests the Board's determination that it is responsible for permanent total disability benefits.

■ We review workers' compensation cases in accordance with the standard articulated in *Western Baptist Hospital v. Kelly*, Ky., 827 S.W.2d 685, 687 (1992). Thus, we may correct the Board only

where we perceive that "the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Id.* at 687. The issue raised by Sears does not involve the Board's assessment of the evidence; it turns instead upon the Board's application of the holdings in *Whittaker v. Fleming*, *Fleming v. Windchy*, and *Spurlin v. Brooks, supra.* After our review, we cannot conclude that the Board erred in its application of the law.

■ The evidence before the ALJ would have supported a finding that Dennis was totally disabled as a result of a worsening of his 1995 injury alone. However, in quite specific terms, the ALJ found that Dennis was totally occupationally disabled as a result of the combined effects of an increase in his prior back impairment *and* the psychological condition caused at Sears. Opinion of the ALJ, p. 4. Under these circumstances, the law dictates that the liability for total occupational disability benefits rests upon Sears—the employer at risk at the time of the last injury. *Fleming v. Windchy*, 953 S.W.2d at 607, *Whittaker v. Fleming*, 25 S.W.3d at 462, *Spurlin v. Brooks*, 952 S.W.2d at 690–691; *see also, Phoenix Manufacturing Co. v. Johnson*, Ky., 69 S.W.3d 64 (2002). Although Dennis's 1995 injury was quite devastating, there is evidence in the record to support the ALJ's finding that Dennis became totally disabled after the October 2001 incident with its resulting psychological impairment. Therefore, we find no error in the Board's application of the law.

■ In its appeal, Radio Shack argues that there was no authority allowing the ALJ to apportion medical expenses between the two employers. Relying on

KRS [1] 342.020 and *Derr Construction Co. v. Bennett*, Ky., 873 S.W.2d 824 (1994), Radio Shack contends that Sears should be solely responsible for the medical expenses related to Dennis's back ailment as well as for those necessary to treat his psychiatric condition.

Again, we hold that the Board was correct in its resolution of this issue when it reasoned as follows:

> While it is true in general that the last employer would be responsible for medical expenses, there are occasions where medical expenses *can be clearly distinguished as resulting from distinct and separate events and body parts*. Here, expert testimony indicates the physical injury to Dennis'[s] low back at Sears did not result in any structural change nor did it result in additional impairment. There was evidence upon which the ALJ could reasonably conclude the injury at Sears produced only temporary effects. In such a situation it is proper to *award medical benefits during the temporary period payable by the employer responsible for the temporary aggravation and, once the individual returns to his baseline condition, to require the employer responsible for the earlier injury to resume medical payments*. This is what the ALJ's order on reconsideration specifies. Since the ALJ found the psychological condition was related to the injury at Sears, she appropriately made Sears responsible for the medical benefits related to the psychological condition.

In arguing that it should not be responsible for further medical expenses related to the care of Dennis's back, Radio Shack contends that there is no evidence that his back worsened other than as a result of his employment at Sears. However, Dr. Kriss testified that the two incidents at Sears caused a temporary aggravation of Dennis's symptoms but not any permanent structural change.

The Board based its conclusion on the testimony of Dr. Kriss, and we find no error in its election to rely on his expert opinion. Neither *Derr v. Bennett* nor KRS 342.020(1) supports Radio Shack's argument. *Derr* holds that there was no authority to apportion medical expenses for a prior active condition to the Special Fund. However, it does not address the factual situation present in this case: apportionment between employers. Moreover, there is no statutory prohibition for splitting the award of medicals among the claimant's various employers. KRS 342.020(1) provides that:

> the employer shall pay for the cure and relief from the effects of an injury or occupational disease the medical, surgical, and hospital treatment, including nursing, medical, and surgical supplies and appliances, as may reasonably be required at the time of the injury and thereafter during disability, or as may be required for the cure and treatment of an occupational disease. The employer's obligation to pay the benefits specified in this section shall continue for so long as the employee is disabled. . . .

While this statute does not specifically provide for apportionment of medical expenses, it does not prohibit dividing those expenses among different employers and/or insurance carriers when the circumstances so warrant.

The ALJ found that Dennis suffered distinct injuries affecting different parts of his body with each employer. Accordingly, the ALJ's decision requiring Radio Shack to continue to pay the medical expenses incurred for treatment to Dennis's

---

1. Kentucky Revised Statutes.

back was wholly in harmony with pertinent statutes and precedent.

We affirm the opinion of the Workers' Compensation Board.

ALL CONCUR.