**DERR CONSTRUCTION COMPANY,**
**Appellant,**

v.

**Thomas E. BENNETT; Vicki G. Newberg, Acting Director of Special Fund; W. Bruce Cowden, Jr., Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 93–SC–803–WC.

Supreme Court of Kentucky.

April 21, 1994.

Thomas L. Ferreri, William A. Miller, C. Patrick Fulton, Ferreri & Fogle, Louisville, for appellant.

Philip John Castagno, Louisville, for appellee Bennett.

John E. Stephenson, Joel D. Zakem, R. Scott Summers, Labor Cabinet–Special Fund, Louisville, for appellee Newberg.

## OPINION OF THE COURT

Claimant was employed as an iron worker for approximately 21 years, during the last 8 weeks of which he worked for the employer herein. His work included heavy lifting and extensive climbing, usually while wearing a 60–100 pound tool belt. Claimant testified that in the early 1980's he had suffered a staph infection in his left knee. For several years prior to the incident that precipitated this claim claimant had experienced arthritic problems in his knees for which he had sought medical treatment. Claimant's condition required heavy doses of medication, and degeneration of the meniscus was noted. Before claimant's employment with the employer herein, knee implant surgery was recognized as likely to be necessary at some point in the future.

In his application for compensation benefits claimant alleged that he had injured his right knee at work on October 2, 1989. However, his testimony described injuring both knees. After the incident, surgery to repair medial and lateral meniscus tears was performed on claimant's right knee and was followed by physical therapy. The physician who performed the surgery identified the work-related incident of October, 1989, as being the event which necessitated the surgery. He also testified he believed bilateral total knee joint replacements would be required in the future. There was testimony that the severity and abnormally rapid progression of claimant's degenerative arthritic condition were attributable to his many years of strenuous duties as an iron worker. Claimant testified that after the surgery both knees continued to be painful. They required two or three baths per day and medication to alleviate the pain. There was medical testimony attributing claimant's continuing problems to severe degenerative arthritis and vocational testimony that claimant was totally, occupationally disabled.

The Administrative Law Judge (ALJ) concluded that claimant's occupational disability was total and was caused by the cumulative wear and tear to claimant's knees throughout his 21½ years as an iron worker. *Haycraft v. Cohart Refractories Co.*, Ky., 544 S.W.2d 222 (1976). Of the disability, 40% was deemed to be noncompensable because it was active before the October, 1989, incident. The remaining 60% was deemed to be compensable. Because claimant had worked for the employer herein for 8 weeks out of his 1,118

week career, the compensable disability was apportioned 0.43% to the employer and 59.57% to the Special Fund. *O.K. Precision Tool and Die v. Wells,* Ky., 678 S.W.2d 397 (1984); *Southern Kentucky Concrete Contractors v. Campbell,* Ky.App., 662 S.W.2d 221 (1983). Based on the belief that physical and vocational rehabilitation would result in a decrease in claimant's occupational disability, the ALJ ordered a rehabilitation evaluation. KRS 342.710. Finally, the employer was ordered to pay all reasonable and necessary medical expenses associated with the injury.

The employer petitioned for reconsideration, arguing that the ALJ lacked authority to require payment of medical expenses related to the prior, active portion of claimant's disability. The employer also requested additional findings of fact regarding whether the ALJ believed that the injury of October 2, 1989, related to the left knee, right knee, or both and regarding the extent of medical treatment required for the prior, active portion of the condition as well as for the compensable portion of the condition. The ALJ denied the petition, concluding that there was no authority to apportion medical expenses. The ALJ treated liability for medical expenses in this case in accordance with its treatment in pneumoconiosis cases wherein liability for medical expenses is placed upon the last employer.

The employer then appealed the award of medical expenses to the Workers' Compensation Board (Board), arguing that because a significant portion of claimant's occupational disability existed before the work-related injury, it should not be held liable for medical treatment that might have been necessary without the injury. The Board affirmed the decision of the ALJ, noting that because the ALJ determined that this case was governed by *Haycraft, supra,* it was not necessary to identify a specific injury to either knee or to both. Claimant's entire work experience resulted in daily, cumulative trauma to his knees. Regarding the apportionment of medical expenses, the Board recognized that nearly 54 cents of every workers' compensation dollar was at that time paid to medical providers. However, the Board noted that claimant's active impairment and his compensable impairment both related to degenerative arthritis in his knees. Liability for income benefits due to a work-related injury is not removed simply because the worker has an independent, concurrent cause of disability that is not compensable. *Daugherty v. Watts,* Ky., 419 S.W.2d 137 (1967). The Board believed that the same should hold true for medical benefits. The Board also noted that workers' compensation is an exclusive remedy, a statutory abrogation of common law civil liability. In return for protection from large jury awards for pain and suffering, employers provide workers with a form of "no fault" insurance. The Board, therefore, rejected the employer's "fault based" argument that it should not be liable for medical expenses that were related to disability which predated the October, 1989, incident and which the ALJ had ruled was noncompensable, citing *Haycraft, supra; Young v. Terwort,* Ky.App., 459 S.W.2d 136 (1970); and *Daugherty v. Watts, supra.*

The Court of Appeals agreed with the Board and adopted its opinion in full, citing *Western Baptist Hospital v. Kelly,* Ky., 827 S.W.2d 685 (1992).

■ Because this case involves an injury which substantial evidence shows was caused by the effects of the cumulative trauma of work to claimant's knees, we agree that the ALJ properly applied *Haycraft, supra,* to these facts. In such an instance the work-related injury is the degree to which work caused the worker's arthritic condition to result in an active impairment sooner than otherwise would have been the case. *Haycraft, supra* at 225. Therefore, it was not necessary for the ALJ to identify a specific injury to either or both knees, but only to determine that the onset of disability in claimant's knees which was due to his arthritic condition was hastened by work. Furthermore, it is apparent from the ALJ's opinion that the ALJ believed claimant's work had caused the degeneration in both of his knees. There was substantial evidence to support that conclusion.

■ In the instant case, although claimant's entire degenerative condition was attributed to work, 40% of the resulting occupational disability was deemed noncompensa-

ble because it existed prior to the incident of October, 1989. The employer argues that claimant had ongoing medical expenses for physical problems due to the degenerative condition and that there was evidence that knee implant surgery was recognized as an eventuality before the incident of October, 1989, in fact, before claimant worked for this employer. Therefore, the employer argues that it should not be liable for whatever portion of claimant's medical expenses is related to his degenerative condition as it existed prior to the incident of October, 1989.

KRS 342.020, which governs liability for medical expenses, requires an employer to pay for the cure and relief from the effects of an injury, including medical, surgical, and hospital treatment that may reasonably be required at the time of the injury and thereafter during disability. It contains no provision authorizing the apportionment of liability for medical expenses between the employer and the Special Fund. In fact, we are aware of no provision in Chapter 342 which would authorize requiring the Special Fund to pay any portion of a worker's award of medical benefits. KRS 342.120 relates only to the apportionment of liability between the employer and the Special Fund for income benefits to compensate an injured worker for occupational disability which results from the injury. The question that remains, however, is whether, where the injured worker has ongoing medical expenses due to a pre-existing, work-related degenerative condition, the employer who is liable for medical expenses due to the subsequent work-related worsening of the condition is entitled to a determination that some portion of the medical expenses is not compensable, just as the prior, active portion of occupational disability is not compensable.

KRS 342.120(4) [now KRS 342.120(6)] specifically exempts the employer from paying income benefits for prior, active disability or for disability resulting from the arousal of a previously dormant condition. However, KRS 342.020 contains no such exemption regarding medical benefits. Liability for medical expenses requires only that an injury was caused by work and that medical treatment was necessitated by the injury. Regardless

of whether an injured worker's disability actually was caused by the arousal of a previously dormant condition rather than by the work-related injury, itself, the employer has been held liable for the payment of medical benefits relative to the injury. For example, in *Young v. Terwort, supra,* cited by the Board, the employer was held liable for the payment of medical benefits resulting from a work-related injury even though the entire disability that resulted was attributed to the arousal of previously nondisabling disease and was apportioned to the Special Fund. In *Accuride v. Donahoo,* Ky., 865 S.W.2d 652, 653 (1993), there was testimony that, absent the worker's prior, active disabling back injuries, the injury that was the subject of the claim would have resulted in no disability. Therefore, the Court held that because KRS 342.120(4) protected the employer from liability for income benefits attributable to any portion of a worker's disability that was caused by nonwork-related factors, the Special Fund should pay the entire award. The medical expenses apparently were paid by the employer without objection.

In the instant case the ALJ determined that claimant had sustained a work-related cumulative trauma injury while working for his employer, a determination that was supported by substantial evidence. The ALJ also determined that claimant's arthritic condition, to which the last employment contributed, was caused by the cumulative trauma of his many years of iron work. Regardless of whether future knee implant surgery had been recognized as an eventuality before the incident of October, 1989, there was testimony that the incident had hastened the date on which the surgery would be required. Therefore, although it might seem harsh on the facts of this case to impose liability for future medical expenses necessitated by claimant's arthritic condition on this employer, it has been determined that work done for the employer contributed, at least to some degree, both to the condition and to claimant's resulting disability. Under such circumstances, where work has caused the disabling condition, the resulting medical expenses ought to be borne by the workers' compensation system. See Larson, *Workmen's Compensation Law,* § 96.70. This

theory is embodied in the language of KRS 342.020. Because KRS 342.020 does not exempt an employer from liability for any portion of a worker's medical expenses in those instances where the work-related injury constitutes a progression or worsening of a prior, active work-related condition, we hold that the employer is responsible for the medical expenses necessary for the cure and relief of the arthritic condition in claimant's knees.

The decision of the Court of Appeals is hereby affirmed.

All concur, except STUMBO, J., who is not sitting.