RENDERED: SEPTEMBER 25, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-0972-WC

FRANCES DUNBAR               APPELLANT


       PETITION FOR REVIEW OF A DECISION
v.       OF THE WORKERS' COMPENSATION BOARD
         ACTION NO. WC-13-64482


JENNIE STUART MEDICAL CENTER;
HON. CHRISTINA D. HAJJAR, ADMINISTRATIVE
LAW JUDGE; AND KENTUCKY WORKERS'
COMPENSATION BOARD           APPELLEES


AND        NO. 2018-CA-1095-WC


JENNIE STUART MEDICAL CENTER       CROSS-APPELLANT


      CROSS-PETITION FOR REVIEW OF A DECISION
v.       OF THE WORKERS' COMPENSATION BOARD
       ACTION NOS. WC-05-68114 AND WC-13-64482


FRANCES DUNBAR; DR. JOHN LACH;

HON. THOMAS POLITES, ADMINISTRATIVE
LAW JUDGE; HON. CHRISTINA D. HAJJAR,
ADMINISTRATIVE LAW JUDGE; AND
KENTUCKY WORKERS' COMPENSATION
BOARD                                    CROSS-APPELLEES

OPINION
AFFIRMING IN PART, VACATING
IN PART, AND REMANDING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND KRAMER, JUDGES.

ACREE, JUDGE:  Appellant/Cross-Appellee, Frances Dunbar, appeals the

decision of the Workers' Compensation Board, alleging:  (1) the 2018 version of

KRS[1] 342.730(4) applies retroactively; (2) the Board erred in resurrecting the 1994

version of KRS 342.730(4); and (3) it was arbitrary and capricious for the

Administrative Law Judge (ALJ) to deny the "three-times multiplier" to enhance

her income benefits.  Appellee/Cross-Appellant, Jennie Stuart Medical Center

(JSMC), appeals an interlocutory opinion and order compelling it to provide

surgery to Dunbar.  After careful review, we affirm in part, vacate in part, and

remand.

---

[1] Kentucky Revised Statute.

## BACKGROUND

The facts underlying these appeals describe two work-related accidents. Dunbar, a 62-year-old woman, injured her lower back on July 14, 2005, while working for Pennyroyal Hospice, Inc. She sought benefits, but the parties ultimately settled. Dunbar continuously received treatment for her lower back.[2] On October 10, 2013, Dunbar sustained another work-related injury to her lower back, left hip, and left leg, while working as a floor nurse for JSMC. She sought workers' compensation benefits.

Dunbar's claim was assigned to ALJ Polites. ALJ Polites concluded that the 2013 injury permanently aggravated or exacerbated her pre-existing active lower-back condition. ALJ Polites entered an interlocutory decision, ordering JSMC to provide surgery to Dunbar and to pay temporary total disability from October 10, 2013 until she reached maximum medical improvement.[3] Because this was an interlocutory order, JSMC did not appeal.

In 2017, after a period of abatement, Dunbar's case was reassigned to ALJ Hajjar for a final hearing. ALJ Hajjar agreed with ALJ Polites' conclusion that the 2013 accident permanently exacerbated Dunbar's pre-existing active

---

[2] Dunbar sought treatment approximately one week prior to her second work-related injury.

[3] Dunbar underwent surgery and achieved maximum medical improvement approximately one year later, on February 3, 2017.

lower-back condition.  Accordingly, Dunbar was awarded permanent partial disability benefits.  When, in *Parker v. Webster County Coal, LLC (Dotiki Mine)*, 529 S.W.3d 759 (Ky. 2017), Kentucky's Supreme Court found the benefit termination provision of KRS 342.730(4) unconstitutional, ALJ Hajjar calculated Dunbar's benefits based on the 1994 version of the statute.  The 1994 version includes a "tier-down" calculation in which the ALJ calculates the injured party's benefits by reducing benefits 10% when the party reaches 65, and 10% each year after that until the party reaches the age of 70.  Additionally, ALJ Hajjar denied the three-times multiplier to enhance Dunbar's benefits.

Dunbar appealed to the Board, asserting ALJ Hajjar erred in applying the tier-down provision of the 1994 version of KRS 342.730(4), and by failing to apply the three-times multiplier.  JSMC appealed the interlocutory order of ALJ Polites, contending Dunbar's surgery was not compensable.  The Board affirmed.  This appeal and cross-appeal followed.

## STANDARD OF REVIEW

Our review of an opinion of the Workers' Compensation Board is limited.  We only reverse the Board's opinion when "the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *W. Baptist Hospital v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).  In reviewing the Board's opinion, we look to

the ALJ's opinion. The ALJ's findings of fact will not be disturbed if supported by substantial evidence. *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735, 736 (Ky. App. 1984). And, the ALJ, as fact-finder, possesses the discretion to judge the credibility of testimony and weight of evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985).

## ANALYSIS

### *Retroactivity of 2018 version of KRS 342.730(4)*

Dunbar first asserts the 2018 version of KRS 342.730(4), which addresses the termination of benefits, should apply to her case. Given the Kentucky Supreme Court's recent decision in *Holcim v. Swinford*, 581 S.W.3d 37 (Ky. 2019), we agree.

We need say no more regarding this argument. Further explanation can be had by reading *Holcim*, *supra*, and its progeny. "Consequently, we must set aside that portion of the Board's opinion and remand this matter to the ALJ for entry of an award applying the 2018 version of KRS 342.730(4)." *Lone Mountain Processing v. Turner*, 593 S.W.3d 72, 74 (Ky. App. 2020); *see also Crittenden County Fiscal Court v. Hodge*, 591 S.W.3d 424, 426 (Ky. App. 2019) ("[W]e are bound by the Kentucky Supreme Court's ruling in *Holcim*."); *Pine Branch Mining, LLC v. Hensley*, 590 S.W.3d 268, 275 (Ky. App. 2019) ("[W]e vacate that portion

of the Board's opinion and remand this matter to the ALJ for entry of an award applying the 2018 version of KRS 342.730(4).").

***Three-Times Multiplier***

Dunbar contends the ALJ's denial of the three-times multiplier was arbitrary and capricious. Pursuant to KRS 342.730(1)(c)1., "[i]f, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount . . . ." We find substantial evidence supports ALJ Hajjar's decision to deny the three-times multiplier.

ALJ Hajjar placed emphasis on whether Dunbar is now able to complete her pre-2013 injury job functions. Dunbar testified that prior to the 2013 accident, she was working shifts of 12 to 13 hours, two days per week, and would also work an additional day or two if she was on call. Although floor nurse duties include lifting patients, Dunbar acknowledged her inability to complete this task even prior to 2013. Specifically, when discussing her pre-2013 job capabilities, she noted she could not "pick-up the defendant's attorney." Moreover, she testified that, "I just don't want you to think that I did everything I was supposed to do." It was reasonable for ALJ Hajjar to infer that, before 2013, Dunbar was not completing the full range of duties with which a floor nurse is tasked.

ALJ Hajjar then relied on medical testimony to conclude that any restrictions placed on Dunbar would not prevent her from completing her pre-2013 duties. She relied on testimony from Dr. Sheth, who noted Dunbar was having difficulty performing her job tasks days before the 2013 injury, and Dr. McCord, who noted that Dunbar's physical health was improving and she was increasingly more active due to the successful surgery.

Dr. Bilkey recommended restrictions of limiting lifting to 10 pounds occasionally, no repetitive bending, and no sitting or standing for over 30 minutes at a time. ALJ Hajjar found Dr. Bilkey not credible, due to Dr. McCord's findings that Dunbar's health had actually improved from the surgery. Instead, she found Dr. O'Brian more credible, who restricted Dunbar from repetitive lifting greater than fifty pounds. ALJ Hajjar concluded, even after considering the restrictions of Dr. Bilkey, that Dunbar retained the ability to perform her work at the level she was performing prior to the 2013 injury. Given that Dunbar was not completing the full range of duties typically assigned to floor nurses, we find substantial evidence supports the conclusion that she is able to perform her pre-2013 job duties.

### Interlocutory Order

ALJ Polites, in his interlocutory opinion, ordered JSMC to provide Dunbar with lower-back surgery recommended by Dr. McCord. Relying on *Derr*

*Construction Company v. Bennett*, 873 S.W.2d 824 (Ky. 1994), ALJ Polites

determined the 2013 accident caused or hastened the need for surgery and,

therefore, JSMC was liable for the medical expenses. JSMC first contends that

ALJ Polites erred by relying on *Derr*. We disagree.

In *Derr*, the claimant was an iron worker who suffered arthritic

problems in his knees due to years of labor. Knee implant surgery was recognized

as likely in his future. He was later injured at work and sought compensation

benefits. The Kentucky Supreme Court held in relevant part:

> KRS 342.120(4) [now KRS 342.120(6)] specifically exempts the employer from paying income benefits for prior, active disability or for disability resulting from the arousal of a previously dormant condition. However, KRS 342.020 contains no such exemption regarding medical benefits. Liability for medical expenses requires only that an injury was caused by work and that medical treatment was necessitated by the injury. . . .
>
> . . . .
>
> In the instant case the ALJ determined . . . that claimant's arthritic condition, to which the last employment contributed, was caused by the cumulative trauma of his many years of iron work. Regardless of whether future knee implant surgery had been recognized as an eventuality before the incident of October, 1989, there was testimony that the incident had hastened the date on which the surgery would be required. Therefore, although it might seem harsh on the facts of this case to impose liability for future medical expenses necessitated by claimant's arthritic condition on this employer, it has been determined that work done for the employer contributed, at least to some degree, both to the condition and to

claimant's resulting disability. Under such circumstances, where work has caused the disabling condition, the resulting medical expenses ought to be borne by the workers' compensation system. *See* Larson, *Workmen's Compensation Law*, § 96.70. This theory is embodied in the language of KRS 342.020. Because KRS 342.020 does not exempt an employer from liability for any portion of a worker's medical expenses in those instances where the work-related injury constitutes a progression or worsening of a prior, active work-related condition, we hold that the employer is responsible for the medical expenses necessary for the cure and relief of the arthritic condition in claimant's knees.

*Derr*, 873 S.W.2d at 827-28.

JSMC asserts *Derr* is not applicable because the pre-existing injury in *Derr* was non-compensable, while Dunbar's pre-existing injury was compensable, but waived, when she settled with Pennyroyal Hospice. Although the pre-existing condition in *Derr* was non-compensable, we find this had no bearing on the Court's holding. *Derr* clearly holds that an employer is liable to its employee for medical expenses so long as the work-related injury contributed, at least in some degree, to the pre-existing injury. Nowhere in its holding does the Court distinguish between the compensability of the pre-existing active condition. Therefore, we find *Derr* binding.[4]

---

[4] Though not precedent, we note this Court in *Res-Care, Inc. v. Fritz*, No. 2004-CA-2167, 2005 WL 564279 (Ky. App. Mar. 11, 2005), previously applied *Derr* when the pre-existing condition was compensable.

JSMC next argues ALJ Polites committed clear error when he found Dunbar was working full-time and was performing the full range of duties associated with a floor nurse, and again when he contradicted himself as to whether medical professionals recommended that Dunbar seek emergency or acute treatment for her back prior to the 2013 injury.

However, we are concerned only with whether the fact-finding was supported by substantial evidence. "Substantial evidence has been defined as that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Stanford Health & Rehab. Ctr. v. Brock*, 334 S.W.3d 883, 884 (Ky. App. 2010). Here, it is uncontested that Dunbar's second injury occurred while she was working at JSMC. Both Dr. Lach and Dr. Robbe, who treated Dunbar before and after 2013, opined that her work injury that year was a substantial cause of her symptoms and her need for surgery. Therefore, ALJ Polites' determination that the 2013 work injury caused or hastened the need for surgery is supported by substantial evidence.

## CONCLUSION

For the reasons stated, we vacate the award and remand for a re-calculation of benefits based on the 2018 version of KRS 342.730(4). In all other respects, the award is affirmed.

ALL CONCUR.

-10-

BRIEF FOR APPELLANT/CROSS-
APPELLEE FRANCES DUNBAR:

Craig Housman
Paducah, Kentucky

BRIEF FOR APPELLEE/CROSS-
APPELLANT JENNIE STUART
MEDICAL CENTER:

Samuel J. Back
Henderson, Kentucky