RENDERED:  NOVEMBER 20, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0712-WC


CONIFER HEALTH                                                    APPELLANT


|       | PETITION FOR REVIEW OF A DECISION |
|-------|-----------------------------------|
| v.    | OF THE WORKERS' COMPENSATION BOARD |
|       | CLAIM NO. WC-16-95119             |


FRIEDA SINGLETON; DR. DONNA BETZ;
DR. KEVIN HARRELD; HON. CHRISTINA D.
HAJJAR, ADMINISTRATIVE LAW JUDGE; AND
THE KENTUCKY WORKERS' COMPENSATION
BOARD                                                            APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, DIXON, AND MAZE, JUDGES.

MAZE, JUDGE:  Appellee, Frieda Singleton, sustained a shoulder injury while

working for her employer, Appellant, Conifer Health.  In 2018, Singleton settled

her workers' compensation claim with Conifer Health, but retained the right to

receive medical benefits for her injury pursuant to Kentucky Revised Statutes

(KRS) 342.020.  In 2019, Singleton had a total shoulder replacement, which

Conifer Health claimed was not causally related to her work accident. The administrative law judge (ALJ) disagreed and found the surgery compensable. Conifer Health then appealed to the Workers' Compensation Board (Board), which affirmed the ALJ's decision. Conifer Health now appeals to this Court. For the following reasons, we affirm.

BACKGROUND

On February 5, 2016, Singleton was in a motor vehicle accident on her way to a work meeting for Conifer Health. Singleton saw her primary care physician, Dr. Donna Betz, who referred her to shoulder specialist Dr. Andrew Duffee. Dr. Duffee performed a right shoulder arthroscopic subacromial decompression and open biceps tenodesis. Afterward, Singleton underwent physical therapy and took over-the-counter pain medications, but still had pain in her shoulder.

Meanwhile, in 2018, Singleton settled her workers' compensation claim with Conifer Health. Pursuant to the agreement, Singleton retained the right to receive medical benefits for her injury. KRS 342.020.

Because Singleton had continuing complaints of shoulder pain, Dr. Duffee referred her to Dr. Kevin Harreld, an orthopaedic surgeon. Dr. Harreld diagnosed Singleton with worsening right glenohumeral joint arthritis and recommended a total shoulder replacement. However, Singleton did not want to

undergo another surgery, so Dr. Harreld recommended platelet rich plasma injections as an alternative, conservative treatment.

In March 2019, Conifer Health disputed Dr. Harreld's recommendation by filing a motion to reopen and a concurrent Form 112 Medical Dispute, claiming the platelet rich plasma injections were not reasonable, necessary, or related to the work injury. On June 3, 2019, Conifer Health filed a second Form 112 contesting Dr. Betz's recommended treatment for Singleton's pain with lidocaine patches and tramadol.

The ALJ granted the motion to reopen and joined Dr. Harreld and Dr. Betz as parties to the medical fee dispute. Meanwhile, on June 11, 2019, Conifer Health filed a third Form 112 contesting the total shoulder replacement surgery recommended by Dr. Harreld as not reasonable, necessary, or related to the work injury.

On September 26, 2019, the ALJ conducted a benefit review conference with the parties. Then, on December 2, 2019, the ALJ conducted a hearing on the medical disputes at which Singleton appeared *pro se*. Singleton's testimony was summarized in the ALJ's January 22, 2020 opinion as follows:

> Singleton testified she injured her right shoulder in a car accident while working. She underwent surgery, but her pain came back after the surgery. She tried injections, pain patches and pain medicine for about three years, but then a total shoulder replacement was recommended. She did not want to undergo the surgery at the age of 52

and tried to get Dr. Harreld to put it off. He recommended platelet rich plasma injections, but he could not get those approved. She took more pain medicine, did more therapy, and he again recommended the total shoulder replacement.

She underwent the surgery and now feels great. She is working full time. She stated they keep saying everything happened back 17 years ago, when she had a prior shoulder surgery. However, she testified she did not have any problems until she was in the car accident.

Because her shoulder surgery was a success, Singleton testified she no longer needed pain treatment, so the medical fee disputes over the plasma injections, lidocaine, and tramadol were moot. The only remaining issue was the medical fee for the shoulder replacement surgery.

Besides her testimony, Singleton submitted her medical records from High Field & Open MRI, Dr. Duffee, Dr. Harreld, and others to support her position that the shoulder replacement surgery was compensable. According to Dr. Harreld's records, the ALJ noted that Singleton continued to have pain after her 2016 accident, despite physical therapy, oral NSAIDs, and cortisone injections. Therefore, Dr. Harreld recommended a right total shoulder replacement, which he performed on June 27, 2019.

In support of its position that Singleton's shoulder replacement surgery was non-compensable, Conifer Health submitted various evidence,

-4-

including three reports by Dr. Ronald Burgess, as well as his deposition testimony.

The ALJ summarized Dr. Burgess's reports and opinions as follows:

> In his May 14, 2019 IME report, Dr. Ronald Burgess stated the primary cause of her complaints was osteoarthritis of the right shoulder with progression since her injury on February 5, 2016. He stated the cause was preexisting labral tear along with the natural aging process exacerbated by the trauma of the motor vehicle accident. He opined she may require a total shoulder replacement in the future, but preferably after the age of 65. He attributed her current treatment to the exacerbation of her osteoarthritis by the motor vehicle accident.
>
> In his June 13, 2019 report, Dr. Burgess agreed Singleton would be a candidate for right total shoulder replacement based upon the radiographic evidence and Dr. Harreld's notes indicating her shoulder pain is not responsive to conservative care and is interfering with daily activities. Dr. Burgess opined that the request for total shoulder replacement is related to the prior, non-work-related, previously active condition of her right shoulder, but the work injury exacerbated the discomfort in her glenohumeral joint arthritis, without increasing the severity. Based on the radiographs, Dr. Burgess did not feel there was enough glenohumeral joint space to avoid a total shoulder replacement.
>
> Dr. Burgess testified on August 21, 2019, Singleton had an osteoarthritic shoulder prior to the motor vehicle accident . . . and that the incident exacerbated her discomfort, but did not change the pathology within the shoulder. He stated that the MRI competed [sic] after the accident did not show any acute change other than the prior surgical changes. After the surgical procedure, there was significant chonromalacia [sic], which is loss of cartilage. Dr. Burgess stated that within a medical

-5-

probability, those changes, exacerbated by the accident, were the cause of her pain.

He opined the current need for the total shoulder arthroplasty is causally related to the osteoarthritic condition. He believed more likely than not, she would have had to have a total shoulder replacement at some point if the accident had not occurred. He did not believe the accident increased the osteoarthritic changes.

After summarizing the parties' evidence, the ALJ relied on *McNutt Construction/First General Services v. Scott*, 40 S.W.3d 854 (Ky. 2001), and *Derr Construction Co. v. Bennett*, 873 S.W.2d 824 (Ky. 1994), to conclude that the work accident caused Singleton's dormant degenerative shoulder condition to become disabling and hasten the need for surgery. The ALJ acknowledged that, while Dr. Burgess attributed Singleton's need for surgery to her preexisting labral tear along with the natural aging process, he also stated Singleton's condition was exacerbated by the trauma of the work-related motor vehicle accident. Thus, the ALJ ruled the shoulder replacement surgery was compensable.

Conifer Health petitioned the ALJ to reconsider her decision, arguing that she erred in interpreting Dr. Burgess's opinions and that Singleton failed to present evidence that her condition was causally related to the work accident. The ALJ denied Conifer Health's petition as an impermissible re-argument of the merits, but also further explained her findings and reliance on *Derr*:

The point of referring to the *Derr* case was to show that employers are responsible for medical expenses if it is

determined that the work injury contributed at least to some degree to the need for surgery, even if the surgery is already a possibility due to a pre-existing condition. Singleton testified she had no pain prior to the injury. In his first report, Dr. Burgess initially stated the surgery would be needed eventually, possibly after the age of 65. However, in his second report, he agreed she was a candidate due to the radiographic evidence and Dr. Harreld's notes indicating her pain is not responsive to conservative care and was interfering with her daily activities. Dr. Burgess noted her arthritic changes were exacerbated by the accident and were the cause of her pain.

Thus, this ALJ found the accident caused her pre-existing dormant condition to become active, and at the very least, contributed to her pain. The arthritic changes <u>and</u> the pain were why Dr. Burgess felt she was a candidate for the surgery, and why Dr. Harreld recommended the surgery. Thus, this ALJ finds the pain from the injury contributed to her need for surgery, and thus, the surgery is compensable.

February 20, 2020 Order (emphasis in original).

Conifer Health then appealed to the Workers' Compensation Board, arguing once again that the ALJ misinterpreted Dr. Burgess's testimony. The Board disagreed and affirmed the ALJ's decision, holding that the ALJ has the sole authority to determine the weight, credibility, and substance of the evidence, and the record contained substantial evidence supporting the ALJ's decision. Furthermore, the Board held that, even in situations with preexisting conditions, if the work-related trauma hastens the need for surgery, the surgery is compensable.

Conifer Health now petitions for review to this Court, arguing that the ALJ misinterpreted Dr. Burgess's opinions and the Board erred in upholding the ALJ's decision. Specifically, Conifer Health claims that, while Dr. Burgess admitted that the accident increased Singleton's pain and discomfort, he did not believe the accident increased her arthritic condition. So, Conifer Health argues the total shoulder replacement is not causally related to the work accident and, therefore, is not compensable. Conifer Health also claims the Board misstated the law when it stated that the employer bears the burden of proof. Instead, Conifer Health contends Singleton had the burden, and she failed to meet this burden by not presenting any evidence beyond her lay testimony to prove her total shoulder replacement was related to the work accident.

STANDARD OF REVIEW

The Court's role in reviewing decisions of the Workers' Compensation Board "is to correct the Board only when we perceive that the Board has overlooked or misconstrued controlling law or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Butler's Fleet Service v. Martin*, 173 S.W.3d 628, 631 (Ky. App. 2005) (citation omitted). "To properly review the Board's decision, this Court must ultimately review the ALJ's underlying decision. Where the ALJ has found in favor of the party, who had the burden of proof, this Court must determine whether the ALJ's findings were

supported by substantial evidence." *Abbott Laboratories v. Smith*, 205 S.W.3d 249, 253 (Ky. App. 2006) (citing *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986)). Substantial evidence is "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable [people]." *Id.* (quoting *Smyzer v. B.F. Goodrich Chemical Co.*, 474 S.W.2d 367, 369 (Ky. 1971)). And, as the fact-finder, the ALJ, not this Court or the Board, has "sole discretion to determine the quality, character, and substance of the evidence." *Id.* (citation omitted). Not only does the ALJ weigh the evidence, but the ALJ may also choose to believe or disbelieve any part of the evidence, regardless of its source. *Id.*

ANALYSIS

Based on our review, the record contains substantial evidence to support the ALJ's decision. The ALJ was convinced by Singleton's testimony that, after her 2003 surgery, her shoulder was asymptomatic until the 2016 work-related motor vehicle accident. And, the evidence supported Singleton's testimony that she was not having problems with her shoulder before the 2016 accident. Even Conifer Health's medical expert, Dr. Burgess, agreed that Singleton had a preexisting dormant condition, which became painfully active after the 2016 work accident.

-9-

The ALJ clearly understood and interpreted Dr. Burgess's opinions, as set forth in her January 22, 2020 opinion and February 20, 2020 order. The ALJ acknowledged Dr. Burgess's opinion that Singleton's preexisting labral tear, which precipitated the 2003 surgery, along with the natural aging process, attributed to the need for Singleton's total shoulder replacement surgery. However, the ALJ also noted Dr. Burgess's May 15, 2019 IME report wherein he stated that Singleton's medical treatment, up to that point, was reasonable, necessary, and related to the exacerbation of her osteoarthritis by the 2016 work-related accident. Moreover, Dr. Burgess admitted the 2016 accident exacerbated Singleton's pain. Dr. Harreld recommended the total shoulder replacement based upon the painful condition of Singleton's shoulder, which he attributed to the 2016 accident. Therefore, the ALJ concluded the surgery was work-related and compensable. Substantial evidence supported this decision.

Kentucky caselaw clearly states that the arousal of a preexisting dormant condition into disabling reality by a work injury is compensable. For instance, in *McNutt*, *supra*, the Kentucky Supreme Court held that, where work-related trauma causes a dormant degenerative condition to become disabling and to result in a functional impairment, the trauma is the proximate cause of the harmful change. 40 S.W.3d at 859. Hence, the harmful change comes within the definition of an injury and is compensable. *Id.* "Injury" is defined in KRS 342.0011(1).

This statute indicates that, while the "natural aging process" is not considered to be an "injury[,]" work-related trauma "which is the proximate cause producing a harmful change in the human organism" is an "injury[.]"  KRS 342.0011(1).  And, in *Derr*, *supra*, an employer argued it should not be liable for its employee's medical treatment, which might have been necessary without the work injury, because the employee had arthritis in his knees and knee implant surgery was likely needed at some point in the future.  The Kentucky Supreme Court disagreed and held that employers are responsible for medical expenses if the work injury contributed, at least in some degree, to the need for surgery, even if surgery is already a possibility due to a preexisting condition.  873 S.W.2d at 827-28.

While Conifer Health views the evidence as supporting a different result, we conclude that substantial evidence supported the result reached by the ALJ.  The ALJ acted within her discretion to determine which evidence to rely upon and her conclusions, based on established caselaw, were not so unreasonable to compel a different result.  Further, the Board did not commit an error in assessing the evidence so flagrant as to cause a gross injustice.  *Butler's Fleet Service*, 173 S.W.3d at 631.

We next turn to Conifer Health's argument that the Board misstated the law, and Singleton failed to meet her burden of proof.  First, Conifer Health claims the Board incorrectly stated the law regarding the burden of proof in its

May 1, 2020 opinion based on the following sentence: "In a post-award medical fee dispute, the employer bears the burden of establishing the requested medical treatment is neither reasonable or necessary, nor causally related to the work injury." Notably, Conifer Health does not argue that the ALJ or the Board impermissibly shifted the burden of proof in their decisions. Instead, Conifer Health simply indicates the burden of proof is misstated and argues that Singleton retained the burden of proving her surgery is work-related.[1]

To be clear, the "burden of persuasion is on the claimant to prove every element of a workers' compensation claim." *Pike Cty. Bd. of Educ. v. Mills*, 260 S.W.3d 366, 368 (Ky. App. 2008) (citation omitted). However, on a motion to reopen a workers' compensation case, "[t]he party responsible for paying post-award medical expenses has the burden of contesting a particular expense by filing a timely motion to reopen and proving it to be non-compensable." *Crawford & Co. v. Wright*, 284 S.W.3d 136, 140 (Ky. 2009) (citation omitted). In other words, while the claimant has the burden to prove causation, *i.e.*, that the condition for

---

[1] Conifer Health cites *Addington Resources, Inc. v. Perkins*, 947 S.W.2d 421 (Ky. App. 1997), and *Kingery v. Sumitomo Electrical Wiring*, 481 S.W.3d 492 (Ky. 2015), to argue that Singleton retained the burden of proof on appeal. We note that *Addington* was specifically criticized by the Kentucky Supreme Court in *C&T of Hazard v. Stollings*, No. 2012-SC-000834-WC, 2013 WL 5777066 (Ky. Oct. 24, 2013) for the idea that the employee had the burden of proof to show medical expenses were work-related. *Id.* at *2. And, in *Kingery*, the Kentucky Supreme Court did "not reach the question whether [employee] or [employer] had the burden of proof on causation." *Kingery*, 481 S.W.3d at 496. Therefore, neither case supports Conifer Health's contention.

-12-

which she sought surgery resulted from the work-related injury, the employer has the burden in a reopened medical fee dispute to prove that the surgery was unreasonable or unnecessary. *Mitee Enterprises v. Yates*, 865 S.W.2d 654, 655 (Ky. 1993). As the claimant, Singleton succeeded in proving causation before the ALJ, so Conifer Health, as the employer, has the burden on appeal to prove the surgery was unreasonable or unnecessary.

While Conifer Health contends that the Board misstated the law, it does not argue and we do not find that the Board overlooked or misconstrued the law, which is our standard of review on appeal. *Butler's Fleet Service*, 173 S.W.3d at 631. The Board merely recited that medical fee disputes are evaluated for reasonableness, necessity, and work-relatedness without further discussion of the burden of proof. Ultimately, the Board's isolated statement in no way diminishes the reliance the ALJ placed on the evidence to find the surgery compensable.

As the party appealing the ALJ's and the Board's decisions, Conifer Health has the burden of showing no substantial evidence supported the findings, which brings us to the second part of Conifer Health's argument. Conifer Health claims that Singleton failed to meet her burden of proof by not presenting any evidence beyond her lay testimony. We disagree.

First of all, "[a] worker's testimony is competent evidence of his physical condition and of his ability to perform various activities both before and

-13-

after being injured." *McNutt*, 40 S.W.3d at 860 (citation omitted). Simply because Singleton is not a medical expert does not mean that her testimony does not have probative value. *See Yocum Creek Coal Co. v. Jones*, 308 Ky. 335, 214 S.W.2d 410, 412 (1948). Second, Singleton submitted her medical records to the ALJ for review, so her lay testimony was not the only evidence presented. Finally, as stated, when determining if the claimant has met her burden of proof, "the ALJ [has] the sole discretion to determine the quality, character, and substance of [the] evidence . . . [and] may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same party's total proof." *Gaines Gentry Thoroughbreds/Fayette Farms v. Mandujano*, 366 S.W.3d 456, 461 (Ky. 2012) (citations omitted). Here, the ALJ had substantial evidence in the form of Singleton's testimony and medical evidence to conclude, regardless of the burden of proof, the surgery was compensable.

<u>CONCLUSION</u>

For the foregoing reasons, we conclude that the Board did not overlook or misconstrue controlling statutes or caselaw, or flagrantly err in assessing the evidence as to cause gross injustice. Accordingly, we affirm.

ALL CONCUR.

BRIEF FOR APPELLANT:

Mark R. Bush
Clarke D. Cotton
Ft. Mitchell, Kentucky

BRIEF FOR APPELLEE FRIEDA SINGLETON:

Frieda Singleton, *pro se*
Shelbyville, Kentucky